UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RULESS PIERRE,

                Defendant.

19-CR-783 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    After an eight-day trial, a jury convicted defendant Ruless Pierre of four counts in the Superseding Indictment: Count One, securities fraud related to a "Promissory Note Investment Fraud Scheme," Count Two, securities fraud related to a "Franchise Investment Fraud Scheme," Count Three, wire fraud related to an "Embezzlement Fraud Scheme," and Count Four, structuring. (Tr. dated May 27, 2021 at 1203-05, ECF No. 78.) The scheme relevant to this motion is Count One, the "Promissory Note Investment Fraud Scheme."

    On May 25, 2021, at the close of the government's case, Pierre moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal with respect to Count One.[1] (Tr. dated May 25, 2021 at 904, ECF No. 74.) Pierre argued that the government failed to prove that the securities fraud scheme charged in Count One involved a security, since the contracts Pierre provided to his clients were instead promissory notes and guaranteed investment loans falling outside the ambit of the securities laws. (*Id.*) This Court denied that motion, finding that the investment contracts signed by the victims were "well within the definition of [a] security." (*Id.* at 906.)

    Pierre now renews his motion for a judgment of acquittal on Count One of the Superseding Indictment pursuant to Rule 29. (Def.'s Mot., ECF No. 80.) His argument is simple: there is insufficient evidence from which a reasonable jury could have concluded beyond a reasonable doubt that the "investment promissory notes" Pierre issued to his clients, (*see, e.g.*, GX 702), were securities within the meaning of 15 U.S.C. §§ 78j(b) and 17 C.F.R. § 240.10b-5. Because the Court finds that a reasonable jury could have reasonably concluded that the instruments Pierre issued to his clients were investment contracts, a type of document explicitly recognized as a security in the Securities Exchange Act of 1934, the Court denies Pierre's renewed motion.

---

[1] Pierre also moved for a judgment of acquittal on Counts Two, Three, and Four, for separate and independent reasons. (Tr. dated May 25, 2021 at 906-08, ECF No. 74.) The Court denied that motion in its entirety. (*Id.* at 908.) Pierre does not seek to reargue the determinations concerning Counts Two through Four.

## I. BACKGROUND

Pierre engaged in the fraud scheme alleged in Count One for three years, from November 2016 to October 2019, enticing clients to join a group called the "Amongst Friends" Investment Group. (*See, e.g.*, Superseding Indictment ¶ 4, ECF No. 37; GX 702.) The potential investors consisted primarily of individuals from the Haitian community Pierre was a part of. (*See, e.g.*, Tr. dated May 21, 2021 at 517, 576, ECF No. 70.) By falsely promising potential investors that "he would earn a 20% return on their initial investment every 60 days through stock trading," he convinced more than 100 clients to invest in Amongst Friends. (Superseding Indictment ¶ 4, ECF No. 37.) Pierre made these guarantees to investors in documents entitled "investment promissory notes," (*id.* ¶¶ 4-5), issued by his company, R. Pierre Consulting Group Ltd. (*See, e.g.*, GX 702.)

Ultimately, Pierre obtained approximately $5 million from investors, (GX 1210 at 15), and invested approximately $3.8 million of that in the stock market from 2016 to 2019. (*Id.*) Being essentially unschooled in investment strategies, (*see, e.g.*, Tr. dated May 24, 2021 at 691, ECF No. 72; Tr. dated May 25, 2021 at 902, ECF No. 74), he sustained enormous trading losses and was unable to pay his investors the 20% return he had promised. (GX 1210 at 16-17.)

He also withdrew approximately $1.9 million from his trading accounts and transferred them to his personal accounts. (*See, e.g.*, GX 1210 at 16.) He used that money to make partial repayments to some investors, but also spent substantial sums on personal expenses. (*Id.* at 21-32.) His investors ended up losing thousands, and in some cases hundreds of thousands, of dollars. (*See* Tr. dated May 24, 2021 at 683, ECF No. 72) (Investor Frantz Joseph testifying that he never received back any of the $140,000 he had invested); (*id.* at 731) (Investor Fonderre Musongong testifying that he received only $3,000 back from his $49,000 investment); (Tr. dated May 20, 2021 at 383, ECF No. 68) (Investor Shayna Kushner stating that she only received $3,000 out of the $18,000 she invested.) Investors who had invested thousands in the scheme never received the returns they were promised.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Criminal Procedure 29 states that the Court, "[a]fter the government closes its evidence," and "on [a] defendant's motion [,] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Even after a jury returns a guilty verdict, the court may still "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citations omitted). "A

defendant who challenges the sufficiency of the evidence to support his conviction 'bears a heavy burden.'" *Id.* (quoting *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001)). Courts must "avoid usurping the role of the jury when confronted with a motion for acquittal" because "it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Id.* (internal citations omitted).

"A reasonable mind must be able to conclude guilt on each and every element of the charged offense." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (citing *United States v. Macklin*, 671 F.2d 60, 65 (2d Cir. 1982)). "[A]ll reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *United States v. Rodriguez*, 702 F.2d 38, 41 (2d Cir. 1983) (quoting *United States v. Artuso*, 618 F.2d 192, 195 (2d Cir. 1980)). But "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) (quoting *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002)).

### B. Discussion

The Securities Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). SEC Rule 10b–5, in relevant part, makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

The Act defines a "security" to include, *inter alia*, "stock[s]," "investment contract[s]," and "note[s]." 15 U.S.C. § 78c(a)(10). Generally, "to achieve its goal of protecting investors," Congress defined the term "security" broadly, "to encompass virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).

Pierre contends that the Court should acquit him on Count One of the Superseding Indictment "because no reasonable jury could conclude beyond a reasonable doubt that the Amongst Friends promissory notes were securities that fall within the ambit of the federal securities laws." (Def.'s Mem. at 3, ECF No. 81.)

"[I]n searching for the meaning and scope of the word 'security'" in the securities laws, "form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946)). Therefore, the fact that Pierre himself titled the investment instruments as "investment promissory notes" does not dictate the Court's analysis. For instance, in *SEC v. W.J. Howey Co.*, the Supreme Court found a case to involve an "investment contract" even where the contracts between the investors and the promoters were styled as "land sales contracts" and "service contracts." 328 U.S. at 295, 299-300. In that case, the purported investment opportunity involved the ability "to contribute money and to share in the profits of a large citrus fruit enterprise." *Id.* at 299. The investors "[had] no desire to occupy the land or to develop it themselves," and were instead "attracted solely by the prospects of a return on their investment." *Id.* at 300. "The investors provide[d] the capital and share[d] in the earnings and profits," while the promoters "manage[d], control[led] and operate[d] the enterprise." *Id.* at 300. The court found that "the arrangements whereby the investors' interests are made manifest involve investment contracts, regardless of the legal terminology in which such contracts are clothed." *Id.* at 300.

Similarly, in this case, the Court looks to substance over form and concludes that the jury reasonably found that the investment instruments Pierre presented to his investors were investment contracts, not promissory notes. The contracts Pierre drafted and presented to his investors contained language both consistent with an investment and language consistent with a loan. For example, the contracts were entitled "Investment Promissory Note[s]," and specified that "[a]ll investments into the Investment group are recorded as a 'Guaranteed Investment Loan.'" (GX 702.) However, the predominant language in the contracts was consistent with an investment contract, stating that the investor was "making an investment with Amongst Friends [I]nvestment Group," (GX 702), and that "[t]he purpose of the Investment Group is to invest the assets of the group in stocks, bonds, other securities, digital currencies, commercial [and] [r]esidential [r]ental property investments." (*See, e.g.*, GX 702; Tr. dated May 20, 2021 at 398, ECF No. 68.) Further, Pierre himself sent communications to investors purporting to inform them of the balance of their "investment account[s]," their "[i]nvestment payment schedule," "[i]nvestment date," and "[i]nvestment amount." (GX 704.)

The victim witnesses also testified emphatically at trial that that they believed they were investing their money pursuant to an investment contract, not providing Pierre with a loan. (*See* Tr. dated May 20, 2021 at 397, ECF No. 68) (Investor Shayna Kushner stating that she did not believe that her contract with Pierre was a loan because she was "providing money for an investment" and believed she could exit the group at will.) Investor Elizabeth Pamphile testified that she believed she provided money to Pierre for investment purposes when she signed the relevant contract, not for a loan. (Tr. dated May 21, 2021 at 528, ECF No. 70.) In fact, investor Frantz Joseph testified that Pierre told him he titled his contracts on Count One "guaranteed investment loan[s]" instead of investment contracts simply because

4

Pierre "didn't have the proper licenses" to act as an investment broker. (Tr. dated May 24, 2021 at 666, ECF No. 72.) Therefore, accepting Pierre's contention that the instruments at issue in Count One are promissory notes simply because he titled them as such would contravene the intent of the securities laws to "embod[y] a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *W.J. Howey Co.*, 328 U.S. at 299. Calling something a loan does not make it a loan.

Here, the jury reasonably concluded that the instruments at issue were investment contracts. The Court properly instructed the jury that a "security" includes an "investment contract." (Tr. dated May 26, 2021 at 1047, ECF No. 76.) In its jury charge, the Court also defined an investment contract using the definition set forth by the Supreme Court in *W.J. Howey Co.*, which instructs courts how to determine when an investment contract constitutes a security. (*Id.* at 1047-48.) In *Howey*, the Supreme Court defined an investment contract for purposes of the Securities Act to mean "a contract, transaction[,] or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298-99. The first element of the *Howey* test is clearly met because the instruments Pierre provided to his investors involved an investment of money. (*See* Tr. dated May 20, 2021 at 382, ECF No. 68.)

The investment scheme also satisfies the second element of the *Howey* test because it was a "common enterprise." A "'common enterprise' may be established by showing 'horizontal commonality,' or the 'tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits.'" *United States v. Bergstein*, No. 16-CR-746, 2018 WL 2417845, at *4 (S.D.N.Y. May 29, 2018) (quoting *Revak v. SEC Reality Corp.*, 18 F.3d 81, 87 (2d Cir. 1994)). In this case, Pierre solicited money from investors and pooled it in his bank and trading accounts. There were no separate accounts for each individual investor. (*See* Tr. dated May 24, 2021 at 768, ECF No. 72); (*id.* at 670) (Frantz Joseph testifying that he understood Pierre's investment account to include "[a]ll the investment from the friends and family" investment group.) Pierre also told investors that the owned "Investment Collateral" to secure their investments and that that property was owned as a whole by all of the members of the investment group. (*Id.* at 707.) (Fonderre Musongong testifying that Pierre told him that the Investment Group as a whole owned "Investment Collateral"—a residential property in Nyack, New York on Franklin Street.) Finally, Pierre used investor money to pay returns to other investors involved in the group. (*See id.* at 771-72; Tr. dated May 17, 2021 at 26, ECF No. 64.) The "Promissory Note Investment Scheme" is therefore a classic example of a common enterprise by *Howey's* standards.

The final element of *Howey* requires a person to be "led to expect profits solely from the efforts of the promoter or a third party." *W.J. Howey Co.*, 328 U.S. at 299. Here, numerous witnesses testified at trial that they expected their investment returns to stem from Pierre's skill in investing in the stock market. Indeed, Pierre euchred his victims into investing by

touting his supposed—but non-existent—investing skills. (*See, e.g.*, Tr. dated May 24, 2021 at 691, ECF No. 72; Tr. dated May 25, 2021 at 902, ECF No. 74.) Investor Shayna Kushner testified that she invested her money with Pierre because she believed she would receive the promised return through Pierre's investment in stocks. (Tr. dated May 20, 2021 at 382, 387-88, ECF No. 68.) Indeed, she testified she expected to be paid based on Pierre's "progress and success with the stock market," and that he had represented that he was "pretty successful" at investing. (*Id.* at 390-91.) Investor Frantz Joseph testified that Pierre reassured him that we would receive his promised investment returns because his investment was "doing well in the market" and "really growing." (Tr. dated May 24, 2021 at 670, ECF No. 72.) No witness testified at trial that they expected to take any action at all related to their investments; they relied solely on Pierre to generate the promised returns. The Court thus finds that a reasonable jury could have concluded that all of the elements of the *Howey* test are met in this case, such that the investment contracts at issue are the type of securities regulated by the securities laws.

Pierre's purchase and sale of stocks—with that part of the scheme's proceeds that he did not use for personal expenses—provides another, distinct basis for the jury's decision that the fraud scheme charged in Count One was made in connection with the purchase or sale of a security in violation of 15 U.S.C. § 78j(b). The Exchange Act clearly defines a "security" to include stocks. 15 U.S.C. § 78c(a)(10). In fact, the Supreme Court has held that "the public perception of common stock as the paradigm of a security suggests that stock, in whatever context it is sold, should be treated as within the ambit of the [Securities] Acts." *Reves*, 494 U.S. at 62 (citations omitted).

In this case, Pierre continually told investors that he would invest their money in stocks, and he did, except for the funds he diverted to his own use. Shayna Kushner testified that Pierre specifically told her that he was using the money she gave him to trade in stocks. (Tr. dated May 20, 2021 at 438-40, ECF No. 68.) Frantz Joseph testified that Pierre told him that he would buy "volumes of stocks" to generate the guaranteed investment returns. (Tr. dated May 24, 2021 at 662, ECF No. 72.) Pierre also showed Elizabeth Pamphile a stock trading account from E*Trade or Ameritrade and claimed he had a million dollars in the account to reassure her that she would receive the promised returns. (Tr. dated May 21, 2021 at 569-70, ECF No. 70.) This evidence provides a sufficient basis for the jury's conclusion that Pierre's conduct, charged in Count One, was perpetrated "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

### III. CONCLUSION

Because the Court finds that the evidence in this case was palpably more than sufficient for a reasonable jury to conclude that Pierre is guilty of Count One, Pierre's motion for reconsideration of the Court's denial of Pierre's Rule 29 motion is denied.

Dated:  New York, New York
       September 13, 2021

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.